IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

EDNA PAULEY,

        Plaintiff,

V.                                      CIVIL ACTION NO. 3:05-0597

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on September 26, 2002, alleging disability as a consequence of problems in her neck, back, legs, arms and eyes, and headaches. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-six years of age and had obtained a ninth grade education and GED. She has no past relevant employment experience.

In his decision, the administrative law judge determined that plaintiff suffers from "fibromyalgia, chronic lumbar spine strain, a major depressive disorder, and borderline intellectual functioning," impairments he considered severe. Concluding that plaintiff retained the residual functional capacity for a limited range of medium level work and relying on Rule 203.28 of the medical-vocational guidelines[1] and the testimony of a vocational expert, the administrative law judge found her not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings. In finding that plaintiff was able to perform medium level work not limited by other physical restrictions, the administrative law judge adopted an assessment from a nonexamining, nontreating state agency medical advisor. The first problem the Court sees with this assessment is that it was completed on February 15, 2002, and affirmed on April 4, 2002,[2] prior to the date plaintiff's application was filed in this case. In fact, this assessment was completed during review of a previous application and fails to take account of the evidence submitted thereafter. The record does contain two more recent residual functional capacity assessment forms dated January 13, 2003, and May 22, 2003; however both indicate "insufficient medical evidence," though it is not clear why.

The second, and most important, problem with the state agency medical advisor's (and administrative law judge's) residual functional capacity assessment is that it is clearly not supported by substantial evidence. Plaintiff related to Dr. Ron Brownfield, her treating physician,

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

[2] Two state agency medical advisors actually reviewed the evidence, but the second physician did not complete an assessment. He merely indicated his agreement with the first.

2

on May 2, 2002, that she had awakened suddenly one year earlier with severe low back pain radiating into the left hip. She had been through physical therapy and a trial of medication without relief. Clinical findings consisted of tenderness over the left SI joint and trochanteric bursa on the left; difficulty with heel and toe walking and decreased straight leg raising on the left side. Low back pain with left sacroiliitis and subtrochanteric bursitis were diagnosed and plaintiff was treated with steroid injections. Though her symptoms continued, an MRI of the lumbar spine performed the following month was considered normal. In December of 2002, Dr. Brownfield administered trigger point injections and diagnosed fibrositis.[3] Clinical findings on this date included restricted cervical range of motion and paraspinal tenderness.

Trigger points were identified again in February of 2003 and Dr. Brownfield concluded plaintiff had fibromyalgia. In April 2003, she reported pain, swelling and redness down the back of her legs, which Dr. Brownfield felt was due to a Baker's cyst behind the right knee.[4] A November 19, 2003 X-ray of the lumbosacral spine was interpreted as showing "slight" degenerative changes and malalignment at the mid-lumbar level. At an exam on November 24, 2003, plaintiff reported that physical therapy made her back pain worse and Dr. Brownfield noted she could not walk on her toes. Heel walking was difficult as well, and tenderness was detected in the lower lumbar area and over the left SI joint and buttocks muscles. This physician commented that plaintiff

---

[3] One of a group of common, non-articular disorders which include fibromyalgia, myofascial pain syndrome and fibromyositis. They are characterized by aching pain and tenderness and stiffness of muscles at areas of tendon insertions and adjacent soft tissue structures. The Merck Manual, 17th Ed., Merck Research Laboratories, 1999 at 481.

[4] A cyst composed of a collection of joint fluid which has escaped from a bursa or joint and has become surrounded by a new sac in a muscle or other tissue. It is usually seen in the space behind the knee. Attorney's Dictionary of Medicine B-19 (2006).

did have some radicular symptoms into the left buttock and leg and assessed her as having an unusual case of sudden onset debilitating back pain which appeared to be caused by a myofascial pain/strain syndrome. He related he had written a note to the effect that this condition was disabling and that note is contained in the record. Finally, at a March 17, 2004, exam plaintiff's complaints included continued back pain, collapsing of the left leg while standing, pain over the whole left side of her body and fatigue. She did relate that medication was somewhat helpful for her pain symptoms.

On May 14, 2004, Dr. Brownfield completed a residual functional capacity assessment in which he expressed the opinion plaintiff could lift and carry fifteen to twenty pounds occasionally, ten frequently; stand/walk one to two hours total, ten to fifteen minutes at a time; sit four hours total, thirty to thirty-five minutes at a time; never climb; only occasionally kneel, crouch, crawl, balance, stoop; had limited reaching and pushing/pulling abilities; and, had environmental limitations on heights, vibration and temperature extremes. In listing the conditions that support these limitations, Dr. Brownfield indicated that blood work had revealed polymyositis as one of those conditions. He indicated this is a connective tissue disorder.[5]

Although it is not clear why, the Commissioner sent plaintiff to Dr. Mark Burns for a consultative physical exam on August 12, 2004. Contrary to all other reports, Dr. Burns found no abnormalities on exam other than limited range of motion in the lumbar spine. Consequently, he completed a residual functional capacity assessment which reflected no limitations at all.

---

[5] The Merck Manual describes it as characterized by inflammatory and degenerative changes in the muscles leading to symmetric weakness and some muscle atrophy. See, The Merck Manual, supra at 434.

As noted, the administrative law judge chose to adopt the untimely assessment from the state agency medical advisors and found that plaintiff could perform medium work. The only support for this finding is the evaluation by Dr. Burns which stands in stark contrast to all of the treatment notes from Dr. Brownfield. The administrative law judge rejected the treating physician's opinions on the basis that they were not supported objective medical findings. While he noted that treatment notes show only findings of tenderness and limited lumbar spine range of motion, he failed to take account of the findings of inability to walk on the toes, difficulty walking on the heels, decreased range of motion in the cervical spine on at least one occasion and the presence of multiple trigger points. Given these findings, the Court concludes that the administrative law judge's findings relative to plaintiff's physical ability to engage in work activities lack evidentiary support and that remand will be required in order to reevaluate plaintiff's residual functional capacity. In doing so, treating physicians should be asked for opinions, as detailed as possible, setting forth clinical findings and discussing the relationship of those findings to the polymyositis, which is described as a progressive disease.[6] The parties should also be permitted to submit additional, relevant evidence.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

---

[6] Id.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to all counsel of record.

DATED: March 5, 2007

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE